IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BRUCE DODD,

       Plaintiff,

v.                                                                No. 1:11-cv-01073-JDB-egb

CHRYSLER GROUP LLC,

       Defendant.

---

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff, Bruce Dodd, brought this lawsuit on April 1, 2011, alleging that he purchased a defective automobile, which Defendant, Chrysler Group LLC ("Chrysler"), has failed to repair in violation of the Tennessee Motor Vehicle Warranties Act ("Tennessee Lemon Law"), Tenn. Code Ann. §§ 55-24-101 to -112; the Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. §§ 2301–2312; the Tennessee Uniform Commercial Code ("TUCC"), Tenn. Code Ann. §§ 47-2-313, -314; and the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 et seq. Plaintiff asserts that jurisdiction resides in this Court by reason of his federal Magnuson-Moss claim, 15 U.S.C. § 2310, 28 U.S.C. § 1331, and on the basis of diversity of citizenship, 28 U.S.C. § 1332. Before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") No. 17.) Plaintiff has responded in opposition to the motion. (D.E. No. 27.) For the reasons stated herein, the Defendant's motion is GRANTED IN PART.

## I.   FACTUAL BACKGROUND

*Plaintiff's Purchase.* On January 27, 2010, Dodd bought a new 2010 Chrysler 300 automobile from Humboldt Chrysler Dodge Jeep, Inc. ("Humboldt Chrysler") in Humboldt, Tennessee. (Def.'s Stmt. of Undisputed Facts in Supp. of its Mot. for Summ. J. ¶ 1, D.E. No. 21) (hereinafter "Def.'s Stmt. of Facts"). The total purchase price of the vehicle was $43,289.22, including finance charges and a down payment. (Id. at ¶ 10.) At the time of sale, Plaintiff received from Chrysler an express 3-year/36,000 mile Basic Limited Warranty covering "the cost of all parts and labor needed to repair any item on [his] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." (Warranty, D.E. No. 27-9 at 7.) Defendant also issued to Dodd a 5-year/100,000 mile Powertrain Limited Warranty that covered "the cost of all parts and labor needed to repair [components of the engine, transmission, front wheel drive, all wheel drive, rear wheel drive or four-wheel drive] that [are] defective in workmanship and materials." (Id. at 12–15.)

*Service and Repair History.* On March 9, 2010, Dodd took the vehicle to Humboldt Chrysler because he claimed the transmission did not change gears smoothly and jerked when he slowed down to stop and as he started up again. (Aff. of Bruce Dodd ¶ 5, D.E. No. 27-2) (hereinafter "Dodd Aff."). The dealership performed a "flash update"[1] to the vehicle's Powertrain Control Module ("PCM") and returned it to the Plaintiff the next day. (Id.; Repair Invoices, D.E. No. 27-5 at 1; Warranty Claim Report, D.E. No. 27-7 at 1) (hereinafter "Repair Invoices" and "Warranty Claim Report"). Dodd again went to the dealership on April 5, 2010, to

---

[1] A "flash update" is a software update to a vehicle's computer system. (Ruch Report, D.E. No. 27-4 at 2.) According to Chrysler Technical Service Advisor Jeffrey Driskell, "[m]any dealers as a courtesy will update vehicle modules when identified by the dealer scan tool that a software update is available." (Driskell Report, D.E. No. 21-1 at 2.)

report the same problems. (Dodd Aff. ¶ 9.) Employees of Humboldt Chrysler test drove the vehicle but did not discover any problems. (Repair Invoices at 3.)

On July 20, 2010, Dodd drove his Chrysler 300 to Helms Motor Co., Inc. ("Helms"), another authorized Chrysler dealership in Lexington, Tennessee. (Dodd Aff. ¶¶ 11–12.) He advised Helms that the automobile did not shift smoothly and that its transmission bumped when downshifting and jerked after turning and accelerating. (Id. at ¶ 12.) Helms test drove the vehicle and updated the PCM pursuant to technical service bulletin # 18-015-10 REV B. (Id. at ¶ 13; Repair Invoices at 4; Warranty Claim Report at 2.) Plaintiff returned to Helms on November 4, 2010, again complaining about the transmission. (Dodd Aff. ¶ 14.) On that visit, he stated that the condition worsened when the vehicle was warmed up and in traffic. (Id.) Upon driving his vehicle, Helms found that it operated normally, and thus returned the automobile to Dodd without making any repairs. (Id. at ¶ 16; Repair Invoices at 5.)

After filing this lawsuit, Dodd took his Chrysler in for two additional repair visits. On May 16, 2011, he went back to Humboldt Chrysler and reported that the vehicle shifted rough when in first gear and hesitated and missed at times. (Dodd Aff. ¶ 17.) The repair invoice from that inspection reflected that the dealer did not find a problem, and therefore, returned it to Plaintiff without service. (Id.; Repair Invoices at 7.) On July 11, 2011, Dodd also went to Humboldt Chrysler, complaining that he was experiencing a hard up shift. (Dodd Aff. ¶ 18.) This time, Humboldt Chrysler found a sticking valve in the car's valve body, which it replaced. (Id. at ¶ 19; Repair Invoices at 6; Warranty Claim Report at 3–4.) Nevertheless, Plaintiff contends that the car's transmission still does not function correctly and that Humboldt Chrysler and Helms have been unable to repair the problem. (Dodd Aff. ¶¶ 20–21.)

*Chrysler's Inspection.* On December 1, 2011, Jeffrey Driskell, a Technical Service Advisor for Chrysler, inspected Dodd's car.[2] (Def.'s Stmt. of Facts ¶ 4.) Driskell prepared a report of his findings, which Chrysler has submitted in support of its motion. (Driskell Report, D.E. No. 21-1.) Therein, Driskell stated that his inspection included a forty-five minute test drive and diagnostic testing. (Def.'s Stmt. of Facts ¶ 5.) He reported that the vehicle did not exhibit the harsh shifting conditions described by the Plaintiff and that the diagnostic testing was normal.[3] (Id. at ¶¶ 5–6.) Based on his inspection, Driskell determined that there were no defects or abnormal conditions with the transmission or operation of Dodd's Chrysler 300.[4] (Id. at ¶ 7.)

*Dodd's Proffered Expert Testimony.* The Plaintiff submitted a report from Steven Ruch, a purported expert in the fields of automotive valuation and repairs. (D.E. No. 27-4.) Ruch claimed

---

[2] In response to the Defendant's statement of undisputed material facts, the Plaintiff stated that he was "without sufficient information to admit or deny" that Driskell inspected his car. (Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 4, D.E. No. 28.) In his report, Driskell stated that his inspection of the vehicle lasted more than four and one half hours. (Def.'s Stmt. of Facts ¶ 5; Driskell Report, D.E. No. 21-1 at 2.) Plaintiff disputes that it lasted that long because he dropped the vehicle off at the dealership at 8:00 a.m. and was told it was ready for pick up at 12:00 p.m. (Dodd Aff. ¶ 30.) Additionally, he was advised that the car sustained damage during the inspection and spent a portion of the time at a body shop. (Id. at ¶ 31.) Dodd contends that the discrepancy regarding the length of the inspection "calls into question Mr. Driskell's veracity as to what was done while the subject vehicle was at the dealership." (Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 4, D.E. No. 28.)

Dodd's response that he is "without sufficient information to admit or deny" Chrysler's fact is not authorized by the Local Rules, which require that the non-moving party respond to each fact by either (1) agreeing that the fact is undisputed, (2) agreeing that the fact is undisputed for summary judgment purposes only, or (3) demonstrating that the fact is disputed with specific citation to the record. LR 56.1(b), Local Rules of the United States District Court for the Western District of Tennessee (2011); Evans v. Walgreen Co., 813 F. Supp. 2d 897, 908 n.4 (W.D. Tenn. 2011) ("Evans' response that she has no basis to admit or deny this statement does not comply with the local rules' requirements for disputing factual assertions in statements of undisputed material facts accompanying summary judgment motions."). Additionally, Dodd's assertion that the Driskell inspection did not last as long as alleged does not demonstrate that it did not occur. Thus, Dodd has admitted to paragraph four of Chrysler's statement of facts by failing to demonstrate its disputed nature through specific citation to the record. See Evans, 813 F. Supp. 2d at 908 nn. 4–5.

[3] As with paragraph four, Dodd stated that he was "without sufficient information to admit or deny, and hence denies" these facts. (Pl.'s Resp. to Def.'s Stmt. of Facts ¶¶ 5–6, D.E. No. 28.) Because those responses are not authorized by the Local Rules, the Defendant's asserted facts are deemed admitted. See Evans, 813 F. Supp. 2d at 908 nn. 4–5.

[4] Plaintiff, of course, disputes that there is no defect in the transmission. However, he again stated that he was "without sufficient information to admit or deny, and hence denies" that Driskell's conclusion was that there is no defect or abnormality with the car's operation. (Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 7, D.E. No. 28.) Paragraph seven of the Defendant's statement of facts is admitted. See Evans, 813 F. Supp. 2d at 908 nn. 4–5.

to have reviewed the vehicle's purchase contract, repair invoices, technical service bulletins, warranty information and other relevant information. (Id. at 1.) He determined the Chrysler 300 had a transmission defect, which the Defendant had failed to remedy within a reasonable amount of time or repair attempts. (Id. at 2.) Ruch opined that the vehicle's defect and repair history would substantially reduce its market value when compared to the same vehicle with no defects and a normal repair history. (Id. at 2–3.) Using Kelly Blue Book trade-in values for a vehicle in "Excellent" condition and one in "Fair" condition, he concluded that Dodd's vehicle had a diminished value of eighteen percent of the purchase price, or $5,850.00. (Id. at 3.)

On February 17, 2012, Chrysler moved to exclude Ruch's testimony on the basis that his opinions were not reached using a reliable basis or methodology and therefore failed to qualify as expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and Federal Rules of Evidence 702 and 703. (D.E. Nos. 15–16.) Upon the Court's referral of Defendant's motion to United States Magistrate Judge Edward G. Bryant for determination, on April 5, 2012, he granted Chrysler's motion. (D.E. Nos. 22, 30.) The Magistrate Judge determined that Ruch's testimony about the defectiveness of Plaintiff's vehicle was not supported by sufficient facts or data to be reliable expert testimony. As to Ruch's opinion about the vehicle's diminished value, Magistrate Judge Bryant held that he did not qualify to give expert testimony on that topic because he lacked the requisite "scientific, technical, or other specialized knowledge [that would] help the trier of fact to understand the evidence or to determine a fact in issue." See Fed. R. Evid. 702(a). The Magistrate Judge further found that Ruch could not offer lay opinion testimony because he lacked personal knowledge about the vehicle's condition. Dodd filed no objections to the Magistrate Judge's order, and the time for him to do so has expired. See Fed. R. Civ. P. 72(a) (allowing a party to file objections to

a magistrate judge's pretrial order within fourteen days after being served with a copy of that order). Therefore, the order excluding Ruch's testimony remains intact.

Chrysler has moved for summary judgment, arguing that Driskell's determination that there were no defects in Dodd's transmission, as well as the Plaintiff's failure to submit any admissible expert proof to the contrary, entitle it to judgment as a matter of law. The Court will first address Plaintiff's Tennessee Lemon Law and Tennessee Consumer Protection Act claims and then turn to his assertions for breach of warranty under Magnuson-Moss and Tennessee's UCC.

## II.  STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that

> [a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." Pucci v. Nineteenth Dist. Court, 628 F.3d 752, 759 (6th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Entry of summary judgment is appropriate

'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Poss v. Morris (In re Morris), 260 F.3d 654, 665 (6th Cir. 2001) (quoting Celotex, 477 U.S. at 322, 106 S. Ct. at 2552). In reviewing a motion for summary judgment, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### III. ANALYSIS

A. Tennessee Lemon Law

The Plaintiff's first claim is based on the Tennessee Motor Vehicle Warranties Act, Tenn. Code Ann. §§ 55-24-101 to -112, which is otherwise known as the Tennessee Lemon Law. Specifically, Dodd relies on § 103(a) of that statute, which provides that

> [t]he manufacturer must replace the motor vehicle with a comparable motor vehicle or accept return of the vehicle from the consumer and refund to the consumer the full purchase price if:
>
>    (1) The nonconformity, defect or condition substantially impairs the motor vehicle; and
>
>    (2) The manufacturer, its agent or authorized dealer is unable to conform the motor vehicle to any applicable express warranty after a reasonable number of attempts.

Tenn. Code Ann. § 55-24-103(a). Recovery under this section requires proof of: (1) a nonconformity, defect or condition that substantially impairs the motor vehicle; and (2) the manufacturer, agent or authorized dealer's inability to conform the motor vehicle to an express warranty after a reasonable number of attempts. Id. Chrysler's motion challenges Dodd's ability to present a genuine issue of material fact on each of these elements.

The Tennessee Lemon Law defines a "substantially impaired" motor vehicle as one with a nonconformity, defect or condition that makes it "unreliable or unsafe for normal operation" or

"reduce[s] its resale market value below the average resale value for comparable motor vehicles." Tenn. Code Ann. § 55-24-101(6). The Tennessee statute contains an objective standard measured by the defect or condition's affect on the vehicle's safe or reliable operation or resale price.[5]

Chrysler points to the testimony of its expert, Driskell, who test drove and performed diagnostic testing on Dodd's vehicle and reported that the transmission operated normally and did not display the harsh shifting conditions that Plaintiff described. (Driskell Report, D.E. No. 21-1 at 2.) Driskell concluded that there were no defects or impairing conditions with the vehicle's transmission or operation. (Id.) Additionally, because the Court has excluded the testimony of Ruch, Defendant maintains that there is no evidence of a substantially impairing defect with Plaintiff's car.

Plaintiff disagrees and insists that he can prove a nonconformity, defect or condition that substantially impairs his car even in absence of Ruch's expert opinions. Dodd has presented his own deposition and affidavit testimony wherein he described the problems with the transmission and stated that it still does not function properly. (Dodd Aff., D.E. No. 27-2; Dodd Depo. 34,

---

[5] Citing to several decisions applying the Tennessee Uniform Commercial Code's use of the phrase "substantially impairs," Plaintiff contends that a motor vehicle is also substantially impaired "if the defect shakes the buyer's faith in the product." See Tenn. Code Ann. § 47-2-608; O'Bryant v. Reeder Chevrolet Co., No. 03A01-9810-CV-00325, 1999 WL 233440, at *2 (Tenn. Ct. App. Apr. 15, 1999); Harper v. Mitchell, No. 85-97-II, 1985 WL 4040, at *2 (Tenn. Ct. App. Dec. 4, 1985); Haverlah v. Memphis Aviation, Inc., 674 S.W.2d 297, 304 (Tenn. Ct. App. 1984), perm. app. denied (May 29, 1984). Because the TUCC states that "the buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs *its value to him*," Tennessee courts have determined that the section contemplates a subjective standard of substantial impairment, "which may vary from person to person." O'Bryant, 1999 WL 233440, at *3. Dodd contends that this Court should apply the same standard to his Lemon Law claim.

The Court need not rely on the Tennessee Court of Appeals' interpretation of substantial impairment under the TUCC, however. The Tennessee Lemon Law carries its own definition of "substantially impair," which does not include how the buyer's "faith in the product" is affected. See Tenn. Code Ann. § 55-24-101(6). Additionally, the Lemon Law does not use "to him" following "substantially impairs" like the TUCC. Thus, the language that led the Tennessee Court of Appeals to adopt a subjective standard under the TUCC is not present in the state's Lemon Law. See also Jolovitz v. Alfa Romeo Distribs. of N. Am., 760 A.2d 625, 628 (Me. 2000) (rejecting the UCC's subjective, "shakes the buyer's faith" standard for lemon law claims based on a comparison of language similar to that in Tennessee's statute).

D.E. No. 27-10.) According to his affidavit, Plaintiff "believe[s] the transmission concern substantially impairs the vehicle's use, value and safety." (Dodd Aff. ¶ 22, D.E. No. 27-2.) Plaintiff's wife, Janice Dodd, was also deposed and testified to experiencing jerking in the transmission and feeling a bump when it is placed in park. (Janice Dodd Depo. 22–24, D.E. No. 27-8.) Finally, Joe Parks of Finish Line Automotive testified to driving Dodd's vehicle and experiencing a "momentary glitch" in the transmission when it shifted from a low to high gear and bogged down the motor. (Parks Depo. 16, D.E. No. 27-3.) Dodd also presents the invoices from Humboldt Chrysler and Helms, which document his complaints about the transmission and the dealer's attempts to remedy the problem. (Repair Invoices, D.E. No. 27-5.)

As this case presently stands, the Court must decide whether testimony must come from an expert or a lay witness to establish a substantially impairing nonconformity, defect or condition under Tennessee's Lemon Law. The only prior Tennessee case to involve this particular point is Vaughn v. Daimler Chrysler Corp., No. E2002-02163-COA-R3-CV, 2003 WL 21297310 (Tenn. Ct. App. June 4, 2003), perm. app. denied (Nov. 3, 2003). In Vaughn, the plaintiff purchased a Chrysler-manufactured automobile from Grindstaff, Inc. in October 1994. Id. at *1. From December 1996 until September 1998, the owner brought the vehicle back to the seller on four occasions, each time complaining of a new problem. Id. He then brought a Lemon Law action against the manufacturer and seller, who moved for summary judgment following discovery. Id. The trial court granted summary judgment in favor of the defendants because the plaintiff failed to present expert testimony to support his contention that the vehicle had a substantially impairing defect or condition. Id. at *2.

On appeal to the Tennessee Court of Appeals, the plaintiff conceded that proof of a nonconformity, defect or condition that substantially impaired his motor vehicle required expert

testimony. Id. The appeals court reviewed the record and determined that "there [was] no material evidence to contradict not only the Defendants' expert, but also an expert who examined the vehicle for Mr. Vaughn, that were was no defect or condition which substantially impaired the vehicle." Id. Thus, the court affirmed summary judgment in favor of the manufacturer and dealer in the absence of expert proof to support the owner's case. Id.

Other courts considering this issue also require the submission of expert proof of a substantially impairing defect or condition in a Lemon Law claim. See, e.g., Heaps v. Gen. Motors Corp., No.: RBD-05-1500, 2006 WL 2456231, at *6–7 (D. Md. Aug. 22, 2006) (granting summary judgment on plaintiff's Maryland Lemon Law claim due, in part, to the lack of admissible expert testimony establishing the existence of the alleged defect); Zitterbart v. Am. Suzuki Motor Corp., 958 A.2d 372, 379, 382 (Md. Ct. Spec. App. 2008) ("Mrs. Zitterbart's attestation, by affidavit, that the vehicle currently was experiencing a 'hesitation problem' was not admissible evidence of a defect, condition, or nonconformity that needed to be repaired or was not reparable. Any such evidence would have to be established by expert testimony."); Laing v. Volkswagen of Am., Inc., 949 A.2d 26, 28–29, 43 (Md. Ct. Spec. App. 2008) (holding that circumstantial evidence of vehicle malfunctions and unsuccessful repair attempts was not sufficient to prove a defect under the lemon law; expert testimony is required); cf. McLaren v. Mercedes Benz USA, LLC, No. 04C-04-019PLA, 2006 WL 1515834, at *3–4 (Del. Super. Ct. Mar. 16, 2006) (vehicle owners' "subjective testimony that the vibrations they feel when driving the vehicle substantially impair the value of the vehicle" was insufficient to establish claim under Delaware Lemon Law).

Here, the only admissible proof that Dodd has offered on the impact of the transmission issues is his personal belief that the alleged jerking and rough shifting "substantially impairs the

vehicle's use, value and safety." Plaintiff has presented no evidence that those conditions make the car "unreliable or unsafe for normal operation" or "reduce its resale market value below the average resale value for comparable motor vehicles" as required by Tennessee's statute. Indeed, he would need expert testimony to do so because such issues are beyond the common knowledge of a layman. See Heaps, 2006 WL 2456231, at *6 (the substantial impairment to a vehicle caused by its intermittent failure to start was not knowledge held by an average person and thus required the testimony of an expert). In light of the absence of expert proof supporting the Plaintiff's contentions and Driskell's conclusion that there were no defects or abnormalities in the vehicle's transmission, the Court finds insufficient proof for the trier of fact to determine that Dodd's Chrysler 300 is substantially impaired by the alleged transmission problems.[6] Defendant's motion for summary judgment as to the Lemon Law claim is GRANTED.

B.   Tennessee Consumer Protection Act

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104. Recovery under the Act requires a plaintiff to prove "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . .'" Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)), perm. app. denied (Oct. 24, 2005). An act or practice is deceptive when it "causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." Id. at 116. Unfair acts or practices, which encompass a broader range of conduct, are those that "'cause[] or [are] likely to

---

[6] Because Dodd's claim fails on the substantial impairment element, the Court need not reach Defendant's argument that his vehicle was not subject to the requisite number of repair attempts.

cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Id. at 116–17 (quoting 15 U.S.C. § 45(n)). Where a defendant's unfair or deceptive act is willful or knowing, the TCPA authorizes the awarding of treble damages. Tenn. Code Ann. § 47-18-109(a)(3).

Dodd asserts that Chrysler, through its authorized dealers, acted unfairly or deceptively by failing to repair his vehicle under warranty within a reasonable period of time. He insists "six repair visits to repair a substantial defect that significantly impairs the drivability of the vehicle is unreasonable." However, "[a] breach of contract or warranty is not in and of itself a deception, misrepresentation or unfairness under the Act." Office Furniture & Related Servs. Inc. v. United Constr. Corp., No. M2003-02126-COA-R3-CV, 2005 WL 378707, at *5 (Tenn. Ct. App. Feb. 16, 2005). In Office Furniture, a roofing contractor sought reversal of a trial court's finding that it breached express and implied warranties and violated the TCPA. Id. at *1. After repairing a roof and issuing a warranty against defects in its materials or workmanship, the contractor failed to repair subsequent leaks. Id. at *2. Although the state appeals court upheld the breach of warranties, it reversed the trial court's finding that the contractor violated the TCPA. It explained that breach of contract or warranties does not necessarily mean that the breaching party acted unfairly or deceptively:

> [A]lthough a breach of contract claim and a Consumer Protection Act claim may arise from the same course of conduct, they are separate and distinct causes of action, each with its own separate elements and defenses. As we held in Hall v. Hamblen, No. 2004 WL 1838180 (Tenn. Ct. App. Aug. 16, 2004), (no Tenn. R. App. P. 11 application filed), breach of contract and violation of the Act are two different causes of action, and existence of one does not necessarily establish the existence of the other. In order to be successful under the Act, it must be proven that "there was some deception, misrepresentation or unfairness, regardless of any breach of contract." A breach of contract or warranty is not in and of itself a deception, misrepresentation or unfairness under the Act.

Id. at *5 (citations omitted). Because the court found no proof that the contractor had acted unfairly or deceptively, it reversed the finding of a TCPA violation. Id.; see also Wilson v. State Farm Fire & Cas. Co., 799 F. Supp. 2d 829, 842 (E.D. Tenn. 2011) (relying on Office Furniture and holding that plaintiffs could not convert their breach of contract claims into TCPA violations without further proof of an act or practice that was deceptive or unfair).

Here, Dodd has simply alleged that Humboldt Chrysler and Helms failed to rectify the problems with his transmission in a timely fashion as required by the warranties Chrysler issued to him. He has failed to point to any proof whatsoever that Chrysler acted in an unfair or deceptive manner in doing so. In fact, the record reflects that Chrysler's authorized dealers examined Dodd's vehicle during the six service visits and made repairs under warranty during three of those visits. As explained by the Tennessee Court of Appeals in Office Furniture, failure to remedy a warrantable defect does not in and of itself give rise to a TCPA claim. Office Furniture & Related Servs. Inc., 2005 WL 378707, at *5. Without proof of an unfair or deceptive practice, summary judgment is GRANTED in favor of the Defendant on the Plaintiff's consumer protection claim.[7]

C.  Breach of Express Warranty and Implied Warranty of Merchantability: Magnuson-Moss Warranty Act and Tennessee's Uniform Commercial Code

Dodd also brings suit under Magnuson-Moss and the TUCC for breach of the express 3-year/36,000 mile limited warranty provided by Chrysler at the time he purchased the automobile,[8] as well as for breach of the implied warranty of merchantability. See 15 U.S.C. § 2310; Tenn. Code Ann. § 47-2-313, -314. The analysis is the same under both statutes. See

---

[7] Because the TCPA claim fails on this prong, it is not necessary for the Court to address Defendant's argument that Plaintiff has not presented proof of an ascertainable loss as a result of its act or practice.

[8] It appears that the alleged transmission problem could also fall under Chrysler's 5-year/100,000 mile Powertrain Limited Warranty, which covers defective transmission components. (See Warranty, D.E. No. 27-9 at 14.)

IWOI, LLC v. Monaco Coach Corp., 581 F. Supp. 2d 994, 999–1000 (N.D. Ill. 2008); Malkamaki v. Sea Ray Boats, Inc., 411 F. Supp. 2d 737, 743 (N.D. Ohio 2005).

### 1.  Jurisdiction Over Magnuson-Moss Claims

In addition to disputing the merits of Plaintiff's express and implied warranty claims, Chrysler challenges the Court's jurisdiction to decide the warranty claims under Magnuson-Moss. Although it is a federal statute, the Court's jurisdiction is limited under Magnuson-Moss by a $50,000 amount in controversy requirement. Schultz v. Gen. R.V. Ctr., 512 F.3d 754, 757 (6th Cir. 2008); Harnden v. Jayco, Inc., 496 F.3d 579, 581 (6th Cir. 2007). Claims brought under the statute are not cognizable in federal court "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). The Court must address the Defendant's jurisdictional challenge before reaching the merits of those claims. See Gross v. Hougland, 712 F.2d 1034, 1036 (6th Cir. 1983) ("We believe that the proper practice is to resolve all questions regarding subject matter jurisdiction prior to ruling upon the merits of the claim."), cert. denied, 465 U.S. 1025, 104 S. Ct. 1281, 79 L. Ed. 2d 684 (1984).

Chrysler points to Dodd's Retail Installment Contract, which shows that the total purchase price for his Chrysler 300 was $43,289.22. (D.E. Nos. 1-2, 27-6.) Excluding the $6,363.00 that Dodd paid in finances charges, the price of his vehicle equates to $36,926.22. (Id.) Defendant cites to Golden v. Gorno Bros., Inc., 410 F.3d 879 (6th Cir. 2005), wherein the Sixth Circuit adopted the following formula for determining the amount in controversy under Magnuson-Moss for revocation of acceptance claims: "'the price of a replacement vehicle, minus both the present value of the allegedly defective car and the value that the plaintiff received from the use of the allegedly defective car.'" Id. at 883 (quoting Schimmer v. Jaguar Cars, Inc., 384

F.3d 402, 406 (7th Cir. 2004)). Chrysler argues that the amount in controversy falls far short of the $50,000 requirement, particularly when finances charges and the current value of the vehicle are taken out of the total. Although Defendant does not assign an amount to the present value of Plaintiff's allegedly defective car or the value he received from it, it argues that the $50,000 amount in controversy is not met regardless of what those sums are.

In response, the Plaintiff contends that Defendant's reliance on <u>Golden</u> is misplaced. Dodd insists that <u>Golden</u> is only applicable to a claim seeking revocation of acceptance, which he does not demand. <u>See</u> <u>Harnden</u>, 496 F.3d at 582 (finding that the <u>Golden</u> formula only applies to revocation of acceptance claims). Because the plaintiff in <u>Harnden</u> sought the remedy of rescission, the Sixth Circuit held that the amount in controversy was determined by "the amount of [plaintiff's] contract, without offset." <u>Id.</u> What was "truly in dispute" was the $51,451.22 purchase price of the motor vehicle exclusive of finance charges. <u>Id.</u>

Dodd also asserts that the Court should include his request for treble damages under the TCPA when determining the amount in controversy. Magnuson-Moss states that the amount in controversy is to be "computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). Accordingly, state law claims are included. <u>Harnden</u>, 496 F.3d at 582; <u>Carver v. Gen. Motors LLC</u>, No. 3:10-1096, 2011 WL 734985, at *2 (M.D. Tenn. Feb. 23, 2011) (including treble damages under the TCPA in calculating that plaintiff's claims exceeded Magnuson-Moss's amount in controversy requirement). When trebling the purchase price of his car, without offsets, Dodd claims that the amount in controversy easily exceeds Magnuson-Moss's $50,000 jurisdictional minimum.

Having evaluated the parties' positions, the Court concludes that it lacks jurisdiction over Dodd's Magnuson-Moss claim. Even assuming that Plaintiff is correct that <u>Harnden</u> applies, the

contract price of his vehicle was $36,926.22. The finance charges he paid are not included. See Harnden, 496 F.3d at 582 n.1. Thus, the Plaintiff must rely on his demand for treble damages under the TCPA to arrive at the jurisdictional threshold. As the Court explained in the previous section, Dodd has failed to present any evidence of unfair or deceptive conduct that would give rise to a TCPA claim. Without the TCPA's treble damages, the amount in controversy would not exceed $50,000. Accordingly, Dodd's count under Magnuson-Moss is DIMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

2.   Jurisdiction Over Remaining Claims Under TUCC

Although it has not been raised by the parties, the Court must determine whether it has subject matter jurisdiction over the remaining claims for breach of express and implied warranties under the TUCC. Federal courts "have an independent duty 'to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" Kentucky Press Ass'n, Inc. v. Kentucky, 454 F.3d 505, 508 (6th Cir. 2006) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). Having dismissed the Plaintiff's cause of action under Magnuson-Moss, the only remaining jurisdictional basis for this suit is the diverse citizenship of the parties. See 28 U.S.C. § 1332. However, it does not appear to the Court that Plaintiff can meet § 1332's amount in controversy requirement of more than $75,000 under the present posture of the case.

The TUCC authorizes damages for breach of warranty measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Tenn. Code Ann. § 47-2-714(2). "The courts have generally accepted the cost of repair as an acceptable, objective measure of the difference in value." Precise Tool & Gage Co. v. Multiform Desiccants, Inc., 42 B.R. 677, 681 (E.D. Tenn.

16

1984). In "proper case[s]," the buyer may also recover any incidental and consequential damages incurred as a result of the breach. Tenn. Code Ann. §§ 47-2-714(3), -715. Even assuming that the value of the car that Dodd accepted was $0 and he was entitled to recover incidental and/or consequential damages, the Court cannot ascertain how the Plaintiff's UCC remedy could exceed $75,000.

Rather than *sua sponte* dismissing those claims, the Court concludes that the proper course of procedure is to allow the parties additional time to brief this issue. The Plaintiff and Defendant are DIRECTED to submit to the Court within fourteen (14) days from the entry of this order their respective positions as to the Court's jurisdiction over the Plaintiff's claims for breach of express and implied warranties under the TUCC. If the Court concludes that it does have jurisdiction to decide the TUCC claims, it will then address that portion of Chrysler's motion for summary judgment. If the Court finds that it does not, it will dismiss them without prejudice.

## IV. CONCLUSION

For the reasons explained herein, the Defendant's motion for summary judgment is GRANTED as to the Plaintiff's claims under the Tennessee Lemon Law and TCPA. The Plaintiff's claim under Magnuson-Moss is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. The parties are DIRECTED to file with the Court within fourteen (14) days their respective positions regarding the Court's jurisdiction to decide the remaining claims under the TUCC for breach of express and implied warranties.

IT IS SO ORDERED this 1st day of May, 2012.

s/ J. DANIEL BREEN_____
UNITED STATES DISTRICT JUDGE